# In the United States Court of Federal Claims

No. 23-1182
Filed: April 18, 2024

|  |  |
|---|---|
| JESSICA D. LANDRESS, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

*Robert Clark MacKichan, Jr.*, Holland & Knight, LLP (DC), Washington, DC, for plaintiff.

*Russell James Upton*, U.S. Department of Justice – Commercial Litigation, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

Plaintiff Jessica Landress alleges that the defendant in this case, the United States, breached a contract for the sale of real property located in Alexandria, Virginia. Before the Court is defendant's Motion to Dismiss. Plaintiff opposes the Motion and additionally requests leave to amend her Complaint. For the reasons discussed in the oral argument and in greater detail below, the Motion is granted in part and denied in part, and plaintiff is granted leave to file an amended complaint.

## I.     Background

This case arises from the U.S. General Services Administration's (the "Agency") disposal of the 110,000-square-feet Hybla Valley Federal Office Building. The Agency held a public auction, and Mrs. Landress submitted the highest bid of $6.75 million. On March 21, 2023, she entered an agreement ("the Agreement") with the government to purchase the property for her bid amount. Compl. ¶¶ 13–14, ECF No. 1; *see* Compl. Ex. A, ECF No. 1-2 [hereinafter Agreement].[1] Soon afterward, she put down 10% of the price, or $675,000, as earnest money deposit. Compl. ¶¶ 15–16. Under the Agreement, the parties were to close forty-five days from the date of acceptance—that is, on May 5, 2023—but the government "reserve[d] the right to [unilaterally] extend the closing date for a reasonable amount of time." Agreement at 8. The

---

[1] The Agreement is titled "Invitation for Bids." It sets forth the rules of the public auction, but also "constitute[s] [the] agreement for sale" between Mrs. Landress and the government. Agreement at 6.

Agreement required Mrs. Landress to "tender . . . the balance of the purchase price" on the
closing date, even if the Agency extended the date.  *Id.*  If she failed to pay, her earnest money
deposit was "subject to forfeit."  *Id.* at 7.

For her part, Mrs. Landress could only "request" an extension, and the government
"reserve[d] the right to refuse [the] request."  *Id.* at 8.  Further, if the government decided to
grant the extension, it could attach conditions requiring Mrs. Landress to pay liquidated damages
or interest, and comply with "additional terms and conditions" to be specified by the
government.  *Id.*

On May 2, 2023, three days before the scheduled closing, the Agency notified plaintiff's
husband and representative Mr. Anastasios Hatzopoulos that the Agency was postponing the
closing date by two weeks, to May 19.  Compl. ¶¶ 17–19.  The reason for the extension is
disputed.  Mrs. Landress contends that the Agency failed to survey the property and sever it from
the larger plot in time for closing.  Compl. ¶ 17; Compl. Ex. B at 1, ECF No. 1-3.  A letter sent
by the Agency on May 3 offered a competing explanation, stating that the plaintiff had failed to
"confirm[] . . . the entity who would be holding title" and therefore the Agency had not initiated
the antitrust clearance process; and the Agency "had seen no draft settlement paperwork from
your settlement attorney."  Def.'s Mot. to Dismiss Ex. A at 1, ECF No. 7-1 (Agency's letter); *see*
Compl. Ex. B at 1 (email thread referencing letter).

Whatever the cause, the postponement threw a wrench in plaintiff's plans to "tender . . .
the balance of the purchase price" "[o]n the closing date."  Agreement at 8.  Plaintiff had secured
funding from a financial institution (after putting down a $95,000 deposit) under the assumption
that the sale would be consummated on May 5, 2023, and the loaning entity pulled out when the
government changed the closing date.  *See* Compl. ¶ 18.  Plaintiff searched for another source of
funding or another purchaser but was unable to find one immediately.  *Id.* ¶ 21.  On May 15,
plaintiff sought an extension of the closing date until June 22 to continue the search, but the
Agency consented only on the condition that she deposit an additional 10% of the purchase price.
*Id.* ¶ 23.  Plaintiff was unable to make the deposit.  *Id.* ¶ 24.  On May 25, the Agency informed
plaintiff that she had defaulted on the contract and forfeited her $675,000 earnest money deposit.
*Id.* ¶¶ 27–30.

This lawsuit followed.  During the pendency of the suit, the Agency sold the property to a
the second-highest bidder in the public auction for $100,000 less than plaintiff's bid price, or
$6.65 million.  Thus, when the dust settled, the government was left with a windfall of $575,000
(plaintiff's $675,000 deposit less the sale-price reduction of $100,000).

## II.   Procedural History

Plaintiff filed its Complaint on July 28, 2023, alleging breach of contract.  *Id.* ¶ 33.
Plaintiff alleged that defendant's breach is "[d]ue to the Agency's inability to convey the
Property by the scheduled closing date," but she also emphasized that the Agency postponed the
closing date "only 3 days before the scheduled closing," and that the reason for the postponement
was the Agency's undue delay in conducting a site survey and severing the property from a

larger parcel of land. *Id.* ¶¶ 8–9, 17.  By way of relief, plaintiff sought, among other things, return of the $675,000 earnest money deposit, "plus interest." *Id.* at 5.

On October 26, 2023, defendant filed a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss, ECF No. 7 [hereinafter Def.'s MTD].  In the Motion, defendant argues that plaintiff is not entitled to interest. *Id.* at 8–9.  It further argues that Mrs. Landress fails to plausibly allege a breach of contract for two reasons.  First, the government could not have breached the contract as a matter of law because it had the express right to postpone the closing date "for a reasonable amount of time" (such as two weeks) for any reason. *Id.* at 11 (quoting Agreement at 8).  Second, defendant argues that even if the reason for the delay is legally relevant, the Agency's letter of May 3 negates plaintiff's allegation that the Agency had failed to sever the property in time to deliver clear title on May 5. *Id.* at 13.

Plaintiff filed her Response on November 24, 2023.  *See* Pl.'s Resp., ECF No. 8.  Plaintiff conceded that she is not entitled to interest on the deposit. *Id.* at 6 n. 2.  Regarding her breach of contract claim, plaintiff explains that defendant breached the duty of good faith and fair dealing by the postponing the closing date despite assuring Mr. Hatzopoulos that the closing date would not be extended. *Id.* at 7–8.  She also argues that defendant waived its contractual right to extend the closing date; and that the Agency unreasonably claimed that it required further information for antitrust clearance. *Id.* at 8–9.  To support some of these assertions, plaintiff attached a new affidavit by Mr. Hatzopoulos. *See* Pl.'s Resp. Ex. A, ECF No. 8-1.  Plaintiff also requested leave to amend the Complaint if the Court finds the original Complaint deficient.  Pl.'s Resp. at 9–10.

On December 8, 2023, defendant filed its Reply.  *See* Def.'s Reply, ECF No. 9.  In the Reply, defendant argued that under plaintiff's theory, the covenant of good faith and fair dealing would impermissibly override the express terms of the contract; and that amending the Complaint would be futile.[2] *Id.* at 4–7.

The Court held oral argument on April 3, 2024.  During argument, the Court orally denied in part defendant's Motion to Dismiss; and granted plaintiff leave to amend her Complaint on or before May 3, 2024.  The reasons for the Court's decision are set forth below.

## III.   Standard of Review

A motion to dismiss brought under RCFC 12(b)(6) should only be granted "when the facts asserted by the claimant do not entitle [her] to a legal remedy." *Spectre Corp. v. United States*, 132 Fed. Cl. 626, 628 (2017) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).  The complaint must allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the litigation, the Court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." *Cary v.*

---

[2] The parties dispute whether plaintiff ought to have specifically invoked the implied covenant in the Complaint, or whether her allegation of "breach of the agreement encompasses a breach of good faith and fair dealing." Pl.'s Resp. at 7; *see* Def.'s MTD at 12 n. 4.  The Court agrees with plaintiff.  Furthermore, the disagreement has little practical significance because the Court grants plaintiff leave to amend the Complaint. *See infra*.

*United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). Although the Court may decline to accept an allegation as true if it is squarely contradicted by evidence referenced in the pleadings or in the public record, *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012), the contradiction must exist even when the allegations are "construed liberally," *Scotch Whisky Ass'n v. U.S. Distilled Prods. Co.*, 952 F.2d 1317, 1319 (Fed. Cir. 1991).

Turning to plaintiff's request for leave to amend her Complaint, RCFC 15(a) provides that "the court should freely give leave when justice so requires." R. Ct. Fed. Cl. 15(a)(2). "[T]his mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claim on the merits." *Te-Moak Bands of W. Shoshone Indians v. United States*, 948 F.2d 1258, 1260 (Fed. Cir. 1991) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. Discussion

### A. Plaintiff is Not Entitled to Interest.

The Agreement states that the government's liability is "strictly limited" to the money paid to the government "without interest." Agreement at 7. Defendant argues, and plaintiff concedes, that this language forecloses plaintiff's demand for interest. Def.'s MTD at 8–9; Pl.'s Resp. at 6 n. 2. The Court agrees, *see Coastal Park LLC v. United States*, 143 Fed. Cl. 289, 293–95 (2019) (construing nearly identical language), and dismisses plaintiff's claim to the extent that she demands interest on the earnest money deposit.

### B. Plaintiff Has Plausibly Alleged Breach of Contract, and She Has Leave to Amend Her Pleadings.

#### 1. The Parties' Rights as a Matter of Law

The Agreement grants defendant "the right to extend the closing date for a reasonable amount of time." Agreement at 8. Plaintiff contends that, although that clause grants defendant the right to extend the closing date by two weeks, the *manner* in which defendant exercised the right violated the implied covenant of good faith and fair dealing. Defendant argues that plaintiff's view of the implied covenant cannot be correct because it impermissibly "expand[s] [the government's] contractual duties beyond those in the express contract or create[s] duties inconsistent with the contract's provisions." Def.'s Reply at 4 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). Therefore, the Court must decide what constraints, if any, the implied covenant of good faith and fair dealing imposes on defendant.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Const. Co., Inc. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)). Under the covenant, both parties have "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). It is well-established that

the duty applies to the federal government and private parties alike.  *Id.*

To be sure, the open-ended nature of the covenant can be in tension with the plain-text approach to contract interpretation.  The Federal Circuit has sought to resolve this tension by anchoring the covenant in the text of the contract.  The written agreement—not its purpose— "helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'"  *Metcalf*, 742 F.3d at 990 (Fed. Cir. 2014) (quoting *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988)).  Thus, although "a breach of the implied duty . . . does not require a violation of an express provision in the contract," it *does* require that "a specific promise . . . be undermined."  *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019).

These principles resolve the question in plaintiff's favor.  The Agreement states that "[o]n the closing date," *regardless of when that date is*, Mrs. Landress must "tender to the Government . . . the balance of the purchase price."  Agreement at 8.  This is a "specific promise" under *Dobyns*.  Therefore, defendant has a duty not to "undermine[]" plaintiff's efforts to tender the balance of the purchase price on the closing date.

This duty attaches to defendant's conduct both before and after the unilateral extension.  First consider conduct before the Agency extended the closing date.  Although the government has the express right to extend the closing date by (say) two weeks, the contract is silent about whether defendant can extend the closing date *without notice*.  The implied covenant of good faith and fair dealing fills that silence—as opposed to imposing a "dut[y] inconsistent with the contract's provisions," *Precision Pine*, 596 F.3d at 831—with the duty to notify Mrs. Landress as early as practicable about the government's decision to postpone, so that she has a meaningful opportunity to find another source of funding.  The duty to provide sufficient advance notice is especially clear if the postponement was the result of the Agency's own "lack of diligence [or] slacking off," *Dotcom Associates I, LLC v. United States*, 112 Fed. Cl. 594, 596 (2013) (citing Restatement (Second) of Contracts § 205 (1981)), as Mrs. Landress has alleged.   In sum, the Court concludes that defendant has an implied duty to extend the closing date only after providing adequate notice.

The implied duty of good faith and fair dealing also attaches to the Agency's post-extension conduct.  On May 15, 2023, plaintiff requested a further extension until June 22 so that she may meet her "specific promise" to pay the balance of the purchase price on the closing date. On May 16, the Agency granted the request but on the condition that plaintiff deposit another $675,000.  Plaintiff was unable to meet the condition, and the contract fell through.  Defendant appears to argue that this condition was a permissible "additional term[] [or] condition[]" under the contract.  Def.'s MTD at 2 (quoting Agreement at 8).  However, the implied covenant prohibits the "abuse of a power to specify terms, [and] interference with or failure to cooperate in the other party's performance."  *Dotcom Associates I*, 112 Fed. Cl. at 596 (citing Restatement (Second) of Contracts § 205 (1981)).  Accordingly, the Court concludes that defendant had an implied duty not to require plaintiff to meet overly burdensome terms and conditions in return

for approving her request for an extension.[3]  Like defendant's implied duty to provide sufficient notice before unilaterally postponing the closing date, the duty to cooperate after the fact is also heightened if the initial postponement was forced by the Agency's lack of diligence.

Nothing in this Court's interpretation of the contract here is in tension with the Federal Circuit's and the Court's opinions in *Coastal Park LLC v. United States*.  2021 WL 3661115, No. 2020-1687 (Fed. Cir. Aug. 18, 2021); 147 Fed. Cl. 179 (2020).  As an initial matter, that case was decided on summary judgment, not on motion to dismiss; and plaintiff did not allege any breach of the implied duty of good faith and fair dealing.  *See* 2021 WL 3661115 at *2, *4.  But even putting those issues aside, *Coastal Park* presented a very different question than Mrs. Landress does here.  In that case, the plaintiff sought and received multiple extensions to accommodate "hurricane-delays in surveying, appraisal, and inspection work."  *Id.*  at *1.  Ultimately, the government refused to grant further extensions unless the plaintiff deposited an additional 10% of the purchase price, which plaintiff failed to do, leading to default.  *Id.*  This Court then held that plaintiff breached the contract because Coastal Park failed to tender payment in full even though "[the closing] date was modified several times [for the plaintiff's benefit]."  147 Fed. Cl. at 184.  The Federal Circuit affirmed, noting that the deposit requirement was justified because the government "had no confidence in Coastal's ability to consummate the transaction should another extension be granted."  2021 WL 3661115 at *3.

The same considerations cut in the opposite direction here.  The Court is asked to delineate the parties' right assuming as true that the government's tardiness—rather than an unpredictable weather event or some action by plaintiff—interfered with her ability to tender payment on the closing date.  Further, whereas the government had "no confidence" in Coastal Park's ability to tender payment, it is undisputed that plaintiff had the ability to close the sale on May 5, and also plausible that she would have met her payment obligation even after the government extended the closing date, had the government given her (1) more notice *before* the postponement, or (2) more time to search for alternatives *after* the postponement.  Therefore, there is no conflict between this opinion and the *Coastal Park* opinions.

## 2.   Plaintiff Has Plausibly Alleged Breach of Contract, and Plaintiff Has Leave to Amend Her Pleadings.

Under the legal standard set forth above, plaintiff has adequately alleged a breach of the implied covenant of good faith and fair dealing.  It is undisputed that the Agency gave plaintiff just three days' notice before extending the closing date, and later denied plaintiff an extension for the purpose of finding a new source of funding or another purchaser unless plaintiff first deposits another $675,000.  Furthermore, plaintiff has plausibly alleged that the Agency extended the closing date because it failed to survey the property and sever it in time to transfer

---

[3] The Court does not decide whether the additional deposit requirement was in fact burdensome enough under the circumstances to violate defendant's implied duty to cooperate with plaintiff's performance of the contract.  At this juncture, it is enough that the deposit requirement plausibly meets the bar.

title on May 5, the initial closing date.[4]  The Court also notes that, at this juncture, it is at least plausible that the Agency was also tardy in submitting paperwork for anti-trust clearance.  *See* Pl.'s Resp. at 5–6.  Putting these allegations together, plaintiff has plausibly asserted that defendant breached the implied duty of good faith and fair dealing by: (1) first creating the conditions, partly or wholly because of its own tardiness, that led Mrs. Landress's financer to back out; and (2) then hindering, and refusing to cooperate in, Mrs. Landress's search for a new source of funding or a replacement purchaser.[5]

During briefing, new theories of relief emerged that might be plausible.  First, plaintiff has argued that defendant waived its contractual right to extend the closing date.  Pl.'s Resp. at 7–9.  Second, plaintiff may be able to state a claim for unjust enrichment in the amount of $575,000, to the extent that the claim is based on an implied-in-fact contract.  *See S. States Henry Co-op., Inc. v. United States*, 4 Cl. Ct. 370, 372–73 (1984).  Justice requires that plaintiff have a chance to test the merits of her clearly plausible claims.  The Court therefore grants plaintiff leave to clarify and amend her complaint.

## V.    Conclusion

For the foregoing reasons, plaintiff's claim is dismissed only to the extent that she demands interest on her deposit.  Accordingly, defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  The Court further grants the plaintiff leave to amend her Complaint.  Plaintiff is directed to file the amended complaint on or before **May 3, 2024**.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[4] Defendant argues that the Court should not accept as true plaintiff's allegation that the Agency failed to sever the property in time, because a letter referenced in plaintiff's Complaint "contradict[s]" the allegation.  Def.'s MTD at 14 (citing *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012)).  The Court is not persuaded.  The Complaint states that the Agency failed to survey and sever the property in time for closing; and postponed the closing date with very short notice to the plaintiff.  Compl. ¶¶ 17–18, 33.  For support, plaintiff attached an e-mail from Mr. Hatzopoulos to the Agency stating that the Agency had informed him that it was "unable [t]o [p]rovide clear title in order to close on 5/5[] as the contract said."  Compl. Ex. B at 1, ECF No. 1-3.  Defendant points to the Agency's reply e-mail, which stated that "the process with Fairfax County by which the deed would be recorded . . . was resolved on May 2, 2023."  Def.'s Reply App'x at 1.  But the Agency's competing representation has no relevance on motion to dismiss.  At best, it creates a dispute of fact to be resolved during discovery or at trial.  Furthermore, on the current record, the Court cannot ascertain whether the Agency needed to complete "the process with Fairfax County" *before* May 2 to be ready to transfer title on May 5.

[5] The Court acknowledges that plaintiff discussed some operative facts very briefly in her Complaint and fleshed them out only later in her Response brief.  Nonetheless, when construed liberally, the Complaint alleges enough facts to state a plausibly meritorious claim.